UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

DR. JOANN CREDLE
6206 Kayla CT
Brandywine, Maryland 20613

     *Plaintiff*,

v.

VIRGINIA COMMUNITY COLLEGE SYSTEM
300 Arboretum Place Suite 200
Richmond, Virginia 23236

     *Defendant*.

Civil Action No.:   3:24cv233

(Jury Trial Requested)

## COMPLAINT

Plaintiff, Dr. Joann Credle ("Dr. Credle" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Virginia Community College Systems ("VCCS" or "Defendant") to redress violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Disability in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"); the Americans with Disabilities Act**,** 42 U.S.C. § 12101, *et seq.* ("ADA"); and the Virginia Human Rights Act, Va. Code Ann. §§ 2.2-3900 *et seq.*("VHRA").

## BACKGROUND

1.     Dr. Credle began working for Defendant VCCS in the Northern Virginia Community College ("NOVA") location in April 1982. In her current position as the Coordinator of Specialized Programs, Dr. Credle works collaboratively with stakeholders and students in administering special programs.

2.      Over the years, Dr. Credle has become aware of NOVA discriminating against employees on the basis of their race, to include Former NOVA Dean Dr. Evette Hyder-Davis and Dr. Alaeldin Abdelbaki.

3.      In June 2022, NOVA's discriminatory bias came to bear down on Dr. Credle. Dr. Credle was summarily and without cause removed from a program she had been diligently working on, and when she complained about it, she was suspended because she was stereotyped as the "Angry Black Woman."

4.      After Dr. Credle complained about her removal and suspension, NOVA retaliated against her. NOVA continued to remove other programs and responsibilities from Dr. Credle. NOVA refused to move Dr. Credle into a Director position, claiming such a position was not available—even though NOVA had, on numerous occasions, moved others into positions they desired by creating those positions.

5.      After Dr. Credle returned to work after being discriminatorily placed on suspension, she began to experience debilitating panic attacks. On July 13, 2022, Dr. Credle informed Provost Diane Mucci that she had experienced a panic attack earlier that day. Provost Mucci sent Dr. Credle information regarding the process for requesting medical accommodations. Seven days later, on July 20, 2022, Provost Mucci informed Dr. Credle that she was required to teach a class starting the fall of 2022 and to work on campus five days a week.  In response, Dr. Credle requested the reasonable accommodation of not being required to teach the class or to work on campus five days a week—which neither she nor any of her non-African American colleagues had been required to do previously. Without attempting to engage in the interactive process required by the ADA-NOVA refused to grant Dr. Credle's reasonable accommodation requests.

6.     NOVA has made ageist comments and innuendos to Dr. Credle, suggesting she "retire."

7.     NOVA's discriminatory and retaliatory actions have created a hostile work environment for Dr. Credle, so much so that Dr. Credle has had to take significant amounts of leave to get away from the hostilities she frequently encounters.

## PARTIES

8.     Dr. Credle is an African-American, 40 years or older, and suffers from debilitating anxiety. At all times relevant to the allegations in this Complaint, she has resided in the State of Maryland.

9.     Defendant Virginia Community College System ("VCCS") is a state agency responsible for administering Virginia's community colleges, including, but not limited to, Northern Virginia Community College ("NOVA"), located at 4001 Wakefield Chapel Road, Annandale, Virginia.

10.     Dr. Credle has been employed by VCCS, working at NOVA, since April 1982.

## JURISDICTION AND VENUE

11.     This Court has federal question subject matter jurisdiction over Dr. Credle's claims arising under Title VII, the ADA, and the ADEA. *See* 28 U.S.C. §1331, and 42 U.S.C. §2000e-5, and 28 U.S.C. §1343.

12.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Dr. Credle's state law claims arising under the Virginia Human Rights Act, Va. Code Ann. §§ 2.2-3900 *et seq.,* ("VHRA"), because those claims are so related to the claims arising under federal law—which are within this Court's original jurisdiction—that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1391 because the acts and omissions complained of occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     Prior to instituting this action, Plaintiff timely filed a Charge of Discrimination with the Virginia Office of the Attorney General, Office of Civil Rights and the U.S.  Equal Employment Opportunity Commission ("EEOC") in which she alleged discrimination, retaliation, and hostile work environment harassment on the basis of her race, age, and disability. *See* **Exhibit 1**, **Exhibit 2**.

15.     The EEOC issued Plaintiff a Notice of Right to Sue on January 2, 2024. *See* **Exhibit 3**.

16.     Dr. Credle has filed the instant Complaint within ninety (90) days of her receipt of the Notice of Right to Sue, thereby satisfying all administrative prerequisites to bringing this action.

## STATEMENT OF FACTS

17.     In April 1982, Dr. Credle started working for VCCS as a Counselor on NOVA's Annandale Campus.

18.     Dr. Credle currently holds the position of Coordinator of Specialized Programs and has held this position at all times relevant to the facts alleged in this lawsuit.

19.     In this position, Dr. Credle works collaboratively with stakeholders and students in administering special programs. As a member of the Provost's office, Dr. Credle reports directly to the Annandale Provost. Dr. Diane Mucci (Caucasian) is the current Provost and has held that position, first in an interim capacity beginning in January 2022 and then in a permanent capacity beginning in July 2022.

20. Dr. Credle is an African American female and over the age of 40.

21. Dr. Credle suffers from various disabilities, including panic disorder, anxiety, and depression.

22. Dr. Credle's disabilities impact her major life activities, including her memory, concentration, and ability to communicate.

23. These disabilities can also result in panic attacks, during which she experiences palpitations, accelerated heart rate, shortness of breath, light-headedness, chest discomfort, and dizziness. These panic attacks impair her ability to think clearly and interact with others.

24. Despite her disabilities, Dr. Credle is able to perform the *essential* functions of her position with and/or without reasonable accommodations.

*Removal from Conference for Hispanic Students ("Conference") Project*

25. On or about June 8, 2022, Dr. Credle was notified that the Director of College Government Affairs and Community Relations, Thomas "Dana" Kaufmann (Caucasian) was removing her from the Conference for Hispanic Students ("Conference") project, alleging that Dr. Credle was not following protocol when she allowed children to be present at the Conference.

26. However, Dr. Credle had arranged for the children to be in a separate room, in close proximity to their parents. In addition, she had obtained prior verbal approval from the Provost, Dr. Diane Mucci, for the children to attend.

27. On the evening of June 8, 2022, Dr. Credle emailed NOVA President, Dr. Anne Kress (Caucasian), expressing her concerns about being removed from the Conference project and requesting to be returned to the project.

28. Dr. Credle's abrupt removal from the Conference project immediately prompted rumors that she was unable to perform her duties.

29.     On June 9, 2022, Dr. Credle emailed Provost Mucci and Mr. Dana Kaufmann regarding these rumors and informed them that she would be submitting medical documentation in support of her need to take a few weeks working away from campus, stating: "I cannot take the people talking behind my back."

*The Events of June 10, 2022*

30.     On June 10, 2022, after not hearing back from Mr. Dana Kaufmann, Dr. Credle went to his office to address the matter in person. Mr. Dana Kaufmann refused to speak with Dr. Credle, falsely claimed that she threatened him, and demanded she leave his office.

31.     Immediately after leaving Mr. Dana Kaufmann's office, Dr. Credle went to Provost Mucci's office to discuss the rumors that were being strewn throughout NOVA about her supposedly not performing her job duties.

32.     As she was distraught about being removed from the program and Mr. Dana Kaufmann's hostile response, Dr. Credle attempted to contact the Director of Human Resources (HR) and EEO, Tammy Currie (African-American).

33.     As she was unable to reach Ms. Currie, Dr. Credle then contacted Charlotte Calobrisi (Caucasian), Associate Vice-President of HR and Dr. Credle's former immediate supervisor. Since Ms. Calobrisi was on vacation at that time, Dr. Credle sent Ms. Calobrisi a text message detailing what had happened.

34.     On the afternoon of June 10, 2022, during a discussion with one of her former students, Dr. Credle expressed that she felt her removal from the Conference project was because she is African American, particularly given that Dr. Credle was the only African American NOVA employee on the Conference Committee and the only committee member reprimanded for doing something she had been given express permission by Provost Mucci to do. None of the non-African

American committee members suffered any adverse employment action for doing something they had been given permission to do. Andrea Scaletta (Caucasian), Dean Rahman's Assistant, overheard the conversation and reported it to Dean Rahman (India or Palestinian).

35.    That same evening, at approximately 8:00 p.m., Dr. Credle received an email from Ms. Currie informing Dr. Credle that she was suspended until further notice because she was "a threat." She was not provided with an opportunity to respond to the allegations.

36.    On information and belief, Provost Mucci never informed Ms. Currie or Mr. Dana Kaufmann that she had given Dr. Credle permission for children to attend the Conference.

37.    On June 15, 2022, Dr. Credle received an email from Daniel Kaufmann (Caucasian), Associate Director of Employee Relations (ER), explaining that ER had been assigned to investigate the unprofessional conduct she allegedly demonstrated on June 10, 2022. Furthermore, Mr. Daniel Kaufmann also instructed Dr. Credle that she was barred from all NOVA premises during her administrative leave period.

38.    On July 6, 2022, Dr. Credle was scheduled to meet with Mr. Daniel Kaufmann, Ms. Currie, and Ms. Calobrisi to discuss the allegations regarding the June 10, 2022 incident. Dr. Credle attempted to have her attorney, Robert Webb, attend the meeting; however, she received an email that day from Mr. Daniel Kaufmann notifying her that employees do not have a right to have an attorney present during an HR meeting.

39.    At the end of the meeting, they informed Dr. Credle that she could return to work on July 11, 2022.

*Dr. Credle's suspension was not in accordance with NOVA policy.*

40.    In Ms. Currie's June 10, 2022, email to Dr. Credle notifying her that she was being suspended effective immediately, Ms. Currie did not offer any "explanation of the agency's

evidence in support of the charge," nor did she give Dr. Credle "a reasonable opportunity to respond."

41.     NOVA failed to provide Dr. Credle the Due Process to which she is entitled under Department of Human Resource Management (DHRM) Policy 1.60, which provides that: "Prior to the issuance of Written Notices, employees must be given oral or written notification of the offense, an explanation of the agency's evidence in support of the charge, and a reasonable opportunity to respond."

42.     In suspending Dr. Credle without first giving her an opportunity to respond to NOVA's allegations, NOVA also violated VCCS Policy 3.12.3(c), which provides that, "*prior to taking such action* [to suspend a faculty member], vice president/executive vice president/provost shall inform the affected faculty member of the reason for the suspension and *provide the faculty member an informal opportunity to respond to the allegations*." (emphasis added).

43.     Only *after* Dr. Credle had served nearly four weeks on suspension, and with only two days remaining of her suspension, did NOVA finally give to Dr. Credle the opportunity on July 6, 2022, to respond to NOVA's inaccurate and discriminatory allegations brought against her, which were, purportedly, the impetus for the suspension.

44.     VCCS Policy 3.12.3(c) also states that it is the "president or the president's designee" who has the authority to suspend a faculty member. At the time of Dr. Credle's June 2022 suspension, Anne Kress was NOVA's President. However, Dr. Credle did not receive any documentation showing that Dr. Kress had authorized her suspension, or that Dr. Kress had designated Ms. Currie, Provost Mucci, or Mr. Dana Kauffman as having the authority to suspend Dr. Credle.

45.     Moreover, Ms. Currie's email violated DHRM Policy 1.60, which requires that, "[w]ritten notification of pre-disciplinary leave with pay pending a disciplinary review of agency pre-disciplinary investigation shall be by **memorandum**...." (emphasis added).

46.     NOVA violated DHRM Policy 1.60 when it prevented Dr. Credle from being on the Annandale Campus or any NOVA premises—as Mr. Daniel Kaufmann instructed Dr. Credle in his June 15, 2022, email--without first determining that Dr. Credle's continued presence "may be harmful to the employee, other employees, clients, and/or patients/residents" or "hinders the agency's ability to conduct business operations."

47.     Lastly, DHRM Policy 1.60 provides that: "Employees may be placed on paid pre-disciplinary leave for up to fifteen workdays...If the disciplinary review or pre-disciplinary investigation is not completed within fifteen workdays...the agency must: Impose disciplinary action in accordance with this policy; [or] Permit the employee to return to work to include remote work or a temporary reassignment pending the outcome of the review or investigation...[and] Advise the employee of the action in writing." NOVA did not take any of these required actions.

48.     Instead, NOVA summarily placed Dr. Credle on paid pre-disciplinary leave for a total of 20 workdays (beginning on June 13, 2022 and lasting through July 8, 2022) and prevented her from being on its premises during that time period.

*Dr. Credle is issued a Letter of Reprimand – a harsher penalty than those given to similarly situated non-African-American employees.*

49.     When Dr. Credle returned to work on July 11, 2022, Provost Mucci presented her with a Letter of Reprimand (LOR) for Misconduct. In the LOR, Provost Mucci alleged that on June 10, 2022, Dr. Credle "had several interactions with colleagues and co-workers on the Annandale Campus that were unprofessional and discourteous" in connection with her removal from a project on June 8, 2022. The LOR claimed that Dr. Credle's interactions on June 10, 2022,

included her "raising her voice and making inappropriate comments to coworkers and a community partner."

50.     Provost Mucci alleged that Dr. Credle's actions on June 10, 2022, violated DHRM Policy 2.35 Civility in the Workplace, DHRM Policy 1.60 Standards of Conduct, and constituted misconduct under VCCS Policy 3.12.0(c). However, Provost Mucci did not identify any particular provision of DHRM Policy 1.60 Standards of Conduct that she claimed Dr. Credle violated.

51.     Nonetheless, DHRM Policy 1.60 policy provides that, "This policy sets forth the Commonwealth's Standards of Conduct and the disciplinary process that agencies must utilize to address unacceptable behavior, conduct, and related employment problem in the workplace or outside the workplace when conduct impacts an employee's ability to do their job and/or influences the agency's overall effectiveness."

52.     Provost Mucci did not allege that Dr. Credle's behavior on June 10, 2022, either impacted Dr. Credle's ability to do her job or influenced the agency's overall effectiveness.

53.     On information and belief, NOVA has not similarly violated these policies when suspending NOVA employees who are not African American.

54.     For example, NOVA did not discipline Elisabeth Garibay (Race: Hispanic/Caucasian), the Acting Student Life Coordinator, for engaging in misconduct that is similar to the misconduct which NOVA claims Dr. Credle engaged in.

55.     In fact, NOVA promoted Ms. Garibay to a permanent position after her misconduct was brought to the attention of Dean Ruiz.

56.     On or around May 2, 2022, Ms. Garibay approached Dr. Credle and was extremely rude. Dr. Credle had asked her to provide a receipt for the money she gave her for the Phi Beta Kappa Honor Society. Ms. Garibay responded that she did not have to provide her with a receipt.

57. Dr. Credle reported her behavior via email to Dr. Anne Kress on May 2, 2022. In her email, Dr. Credle also reported that Ms. Garibay had been rude to a student.

58. Dr. Credle also reported Ms. Garibay's conduct to Provost Mucci, who simply replied that she would talk to Ms. Garibay. Upon information and belief, no further action was taken.  In fact, NOVA promoted Ms. Garibay to a permanent position after her misconduct was brought to the attention of Dean Ruiz.

59. Ms. Garibay's behavior toward Dr. Credle had no less effect of "undermin[ing] team cohesion [or] staff morale," in violation of DHRM Policy 2.35 Civility in the Workplace, than Dr. Credle's alleged "disruptive and inappropriate" behavior on June 10, 2022.

*Dr. Credle returns to work and is subjected to further discrimination and harassment that impacts her mental and physical health.*

60. After Dr. Credle returned to work on July 11, 2022, she began to experience debilitating panic attacks.

61. On July 13, 2022, Dr. Credle informed Provost Mucci via email that when Dr. Credle saw her earlier that day, she felt like Provost Mucci did not want to talk to her, and that is when Dr. Credle experienced a panic attack.

62. Later that day, Provost Mucci emailed Dr. Credle information regarding the process for requesting medical accommodations.

63. Shortly thereafter, on July 20, 2022, Provost Mucci emailed Dr. Credle with a list of discussion items.

64. One item was the new requirement that Dr. Credle work on campus every Monday through Friday from 8am to 4:30pm, effective August 8, 2022, because the Annandale "campus business needs are changing."

65.     However, for the past ten to fifteen years, Dr. Credle had only been required to work on campus four days per week. Despite Provost Mucci's claim that the Annandale "campus business needs are changing," Provost Mucci did not similarly require any of Dr. Credle's colleagues who are not African American to adhere to the five day per week on-campus requirement.

66.     Provost Mucci's email also informed Dr. Credle that she was being stripped of additional duties/responsibilities. More specifically, Provost Mucci informed Dr. Credle that Barbara Hopkins (Caucasian) would be meeting with the Arlington Sheriff's Office by herself and would relay the information back to Dr. Credle.

67.     However, before receiving this email, Dr. Credle had already talked to an individual at the Arlington County Sheriff's Office, who was on vacation around this time. Dr. Credle had everything ready for him, in terms of the classes he needed to take. On information and belief, NOVA has not removed job assignments from faculty members who are not African American when those individuals had been successfully performing those assignments.

68.     Lastly, Provost Mucci informed Dr. Credle that she was expected to teach a Student Development (SDV) course the fall semester.

69.     As Dr. Credle was experiencing panic attacks, which she had never suffered prior to being suspended, she went to speak with Provost Mucci to explain her medical condition and that she did not think she could teach the SDV course.

70.     In response, Provost Mucci suggested that Dr. Credle retire.

71.     Dr. Credle was surprised by this suggestion, as she had never brought up the idea of her retiring to Provost Mucci or anyone else at NOVA. Dr. Credle did not respond because the comment was offensive towards her as an individual over the age of 40.

72.     On July 21, 2022, Dr. Credle emailed the President, Dr. Anne Kress, Ms. Calobrisi, and Ms. Currie regarding Provost Mucci's reducing her duties on the Arlington Sheriff's Office assignment. Dr. Credle also expressed concern that Ms. Hopkins told her [Dr. Credle] that Provost Mucci told her [Ms. Hopkins] that Dr. Kress did not want Dr. Credle to go out and set up programs.

73.     Dr. Kress only responded by advising Dr. Credle that all matters regarding her duties should only be discussed with Provost Mucci.

74.     After Dr. Credle informed Dr. Kress of her concern about this project being removed from her, Ms. Hopkins texted Dr. Credle and accused Dr. Credle of getting her into trouble.

75.     On July 21, 2022, Provost Mucci sent Dr. Credle a follow up email to their July 20, 2022 meeting regarding the work week and SDV courses. Provost Mucci informed Dr. Credle that she would need to request an accommodation in order to be relieved from teaching the SDV courses.

76.     In this email, Provost Mucci also informed Dr. Credle that "excessive absenteeism is not permitted under VCCS or DHRM policy. Similarly, misrepresenting the reason for requesting sick leave is an abuse of sick time and is not acceptable. Any action that is a violation of policy or is not permitted may result in sanctions up to and including dismissal." Dr. Credle found this statement to be threatening her job.

77.     In late July/early August 2022, Dr. Credle submitted a reasonable accommodation (RA) request completed by her physician, Dr. Kully Woodruff. Dr. Woodruff recommended that Dr. Credle would likely benefit from being excused from her teaching obligations for the fall semester, and that her symptoms should be reassessed in six months.

78.     Dr. Credle's RA request included ample medical documentation showing that she needed to be relieved of her teaching duties for the fall semester. Dr. Philicia Jefferson's Psychotherapy Intake Notes dated August 16, 2022, state that Dr. Credle "is constantly worried about having panic attacks in her place of work," and that she "finds herself hastily exiting the environment to avoid embarrassment and to reduce the intensity of the panic attacks. This condition impairs her ability to perform routine work-related tasks. Excessive worry and inhibitions related to classroom instruction, interactions with colleagues who subjected her to a demeaning work-related incident, trigger episodes of panic."

79.     Unfortunately, this request was denied by the Coordinator for Disabilities, Tiwana Barnes. Dr. Credle was informed that her accommodations were denied because the SDV courses were included in her performance plan.

**COUNT I**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**[Title VII, 42 U.S.C. § 2000e, *et seq.*]**

80.     Paragraphs 1 through 79 are realleged and incorporated herein by reference.

81.     Title VII prohibits discrimination on the basis of race when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other terms or conditions of employment.

82.     At all relevant times, Defendant was and continues to be an "employer" within the meaning of Title VII.

83.     Throughout Plaintiff's employment with Defendant, Plaintiff was, and continues to be, an "employee" within the meaning of Title VII.

84.     Before her removal from the Conference Project, Dr. Credle was the only African American on the Conference Committee and the only committee member removed from the Conference project for doing something she was expressly permitted to do by Provost Mucci

85.     VCCS discriminated against Dr. Credle when it removed her from a job assignment—the Conference project. As Dr. Credle mentioned to a former student when she was informed of her removal, she was being removed because she is African American.

86.     NOVA discriminated against Dr. Credle when it falsely accused her of threatening Mr. Dana Kaufmann, perpetuating a stereotyped belief that African American women who raise their voices are "Angry Black Women" and are acting in a threatening manner.

87.     NOVA further discriminated against Dr. Credle when it alleged that her comments to a former student regarding suspected race discrimination were "inappropriate."

88.     Based on these allegations, NOVA suspended Dr. Credle without giving her the requisite opportunity to respond, which is required per NOVA policy. NOVA did not give Dr. Credle an opportunity to respond until *two days* before her suspension ended.  Upon information and belief, no employee outside of Dr. Credle's protected class was denied the opportunity to respond to allegations before disciplinary actions were taken.

89.     Upon Dr. Credle's return to work on July 11, 2022, NOVA issued Dr. Credle a Letter of Reprimand based on these false and discriminatory allegations.

90.     When Dr. Credle returned to work, NOVA reduced her duties and subjected her to additional requirements that did not apply to non-African American employees.

91.     "An adverse action is defined as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Washington v. Offender Aid and Restoration*

15

*of Charlottesville-Albemarle, Inc.,* No. 3:22-cv-00041, 2023 WL 4032875 at *8 (W.D.Va. June 15, 2023) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1988)).

92.     Defendant's actions in demoting Dr. Credle, stripping her of responsibilities relating to projects she had been successfully working on, and requiring her to take on additional responsibilities by teaching the SDV course, constitute adverse employment actions.

93.     By the acts and omissions alleged above, Defendant, in violation of 42 U.S.C. § 2000e-2, intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

94.     As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

95.     As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT II**
**RACE DISCRIMINATION IN VIOLATION OF THE VHRA**
**[Va. Code Ann. §§ 2.2-3900-03, *et seq.*]**

96.     Paragraphs 1 - 79 and 84 - 92 are realleged and incorporated herein by reference.

97.     Va. Code Ann. §§ 2.2-3905(B)(1)(a) makes it unlawful for an employer to "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment, because of such individual's race."

98.     At all relevant times, Defendant was and continues to be an "employer" within the meaning of the VHRA.

99.     Throughout Plaintiff's employment with Defendant, Plaintiff was, and continues to be, an "employee" within the meaning of the VHRA.

100.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

101.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities, to be proved at trial.

102.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT III**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**[29 U.S.C. § 623]**

103.    Paragraphs 1-79 are realleged and incorporated herein by reference.

104.    The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an employee with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

105.    At all relevant times, Defendant was and continues to be an "employer" within the meaning of the ADEA.

106.    Throughout Plaintiff's employment with Defendant, Plaintiff was, and continues to be, an "employee" within the meaning of the ADEA.

107.    Dr. Credle is an individual over the age of 40.

108.    Provost Mucci permitted Dr. Credle to be suspended for doing something (allowing children to attend the Conference) which Provost Mucci had expressly permitted Dr. Credle to do.

109.    Provost Mucci issued a LOR to Dr. Credle after Dr. Credle returned to work from the suspension, in which Provost Mucci stripped Dr. Credle of important projects she had been successfully working on.

110.    Provost Mucci required Dr. Credle to teach an SVR class and work on campus five days each week.

111.    As Dr. Credle was experiencing panic attacks, which she had never suffered prior to being suspended, she went to speak with Provost Mucci to explain her medical condition and that she did not think she could teach the SDV course.

112.    In response, Provost Mucci suggested that Dr. Credle retire.

113.    Dr. Credle was offended by this suggestion, as she had never brought up the idea of her retiring to Provost Mucci or anyone else at NOVA. Dr. Credle did not respond because the comment was offensive towards her as an individual over the age of 40.

114.    Provost Mucci's actions, as set forth herein, show that she was intentionally trying to get Dr. Credle to either resign or be terminated.

115.    Defendant, in violation of the ADEA, knowingly and intentionally subjected Dr. Credle to disparate treatment based on her age when Provost Mucci suggested that Dr. Credle retire when Dr. Credle had never brought up the idea of her retiring to Provost Mucci or anyone else at NOVA.

116.    Provost Mucci's ageist comment to Dr. Credle, encouraging her to "retire," is related to the adverse employment actions taken against Dr. Credle.

117.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

118.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer the loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

119.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT IV
## AGE DISCRIMINATION IN VIOLATION OF THE VHRA
### [Va. Code Ann. §§ 2.2-3900-03, *et seq.*]

120.    Paragraphs 1-79, 105-112, 114, and 116 are realleged and incorporated herein by reference.

121.    The VHRA, Va. Code Ann. §§ 2.2-3905(B)(1(a), makes it unlawful for an employer to "[f]ail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment, because of such individual's…age."

122.    Defendant, in violation of the VHRA, knowingly and intentionally subjected Dr. Credle to disparate treatment based on her age when Provost Mucci suggested that Dr. Credle retire when Dr. Credle had never brought up the idea of her retiring to Provost Mucci or anyone else at NOVA.

123.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

124.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological

damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

125.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT V
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
**[*42 U.S.C. §§ 12101, et seq.*]**

126.    Paragraphs 1-79 are realleged and incorporated herein by reference.

127.    The ADA makes it unlawful for employer to "discriminate against a qualified individual on the basis of disability in regard to . . .the hiring, advancement, or discharge of employees, …. and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a).

128.    To establish a claim for disability discrimination under the ADA, a plaintiff must prove that:

> (1) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances of the adverse employment action raise a reasonable inference of unlawful discrimination.

*Tartaro -McGowan v. Inova Home Health, LLC,* No. 1:21-cv-298 (RDA/TCB), 2022 WL 2232190 at *7 (E.D.Va. June 21, 2022).

129.    At all relevant times, Defendant was and continues to be an "employer" within the meaning of the ADA.

130.    Throughout Plaintiff's employment with Defendant, Plaintiff was, and continues to be, an "employee" within the meaning of the ADA.

131.    Plaintiff was, during all relevant periods, an individual with a disability as she suffered from mental disabilities that substantially limited major life activities.

132.    Dr. Credle was qualified to perform the essential functions of her position. Teaching a SDV course and working on campus five days a week were not "essential" functions of her position as the Coordinator of Specialized Programs.  In all her years as a Coordinator of Specialized Programs, Dr. Credle had not been required to teach a SDV course, and neither she nor her colleagues had been required to work on campus five days each week since the start of the Covid pandemic.

133.    On July 13, 2022, Dr. Credle informed Defendant of her disabilities—anxiety, depression, and associated panic attacks—after she returned to work after being unlawfully suspended.

134.    Shortly thereafter, on July 20, 2022, Provost Mucci emailed Dr. Credle with a list of discussion items.

135.    One item was the new requirement that Dr. Credle work on campus every Monday through Friday from 8am to 4:30pm, effective August 8, 2022, because the Annandale "campus business needs are changing."

136.    However, for the past ten to fifteen years, Dr. Credle had only been required to work on campus four days per week. Despite Provost Mucci's claim that the Annandale "campus business needs are changing," Provost Mucci did not similarly require any of Dr. Credle's colleagues who are not disabled to adhere to the five day per week on-campus requirement.

137.    Provost Mucci's email also informed Dr. Credle that she was being stripped of additional duties/responsibilities. More specifically, Provost Mucci informed Dr. Credle that

Barbara Hopkins (who, on information and belief, is not disabled) would be meeting with the Arlington Sheriff's Office by herself and would relay the information back to Dr. Credle.

138.    Lastly, Provost Mucci informed Dr. Credle that she was expected to teach a Student Development (SDV) course the fall semester of 2022.

139.    "An adverse action is defined as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Washington v. Offender Aid and Restoration of Charlottesville-Albemarle, Inc.,* No. 3:22-cv-00041, 2023 WL 4032875 at *8 (W.D.Va. June 15, 2023) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1988)).

140.    Defendant's actions in stripping Dr. Credle of responsibilities relating to projects she had been successfully working on and requiring her to take on additional responsibilities by teaching the SDV course, constitute adverse employment actions.

141.    As Dr. Credle was experiencing panic attacks--which she had never suffered prior to being suspended--she went to speak with Provost Mucci to explain her medical condition and that she did not think she could teach the SDV course.

142.    On July 21, 2022, Provost Mucci sent Dr. Credle a follow up email to their July 20, 2022 meeting regarding the work week and SDV courses. Provost Mucci informed Dr. Credle that she would need to request an accommodation in order to be relieved from teaching the SDV courses.

143.    In this email, Provost Mucci also informed Dr. Credle that "excessive absenteeism is not permitted under VCCS or DHRM policy. Similarly, misrepresenting the reason for requesting sick leave is an abuse of sick time and is not acceptable. Any action that is a violation

of policy or is not permitted may result in sanctions up to and including dismissal." Dr. Credle found this statement to be threatening her job.

144.    After Dr. Credle applied for a reasonable accommodation and submitted ample medical documentation in support, NOVA denied her request, explaining that the SDV was included as a part of her performance plan. This was never conveyed to Dr. Credle prior to applying for an accommodation.

145.    With the reasonable accommodation she requested, Plaintiff was able to perform the essential functions of her employment position.

146.    Dr. Credle was meeting Defendant's legitimate expectations at the time it took the above-referenced adverse employment actions against her. NOVA's requiring Dr. Credle to teach the SDV course and requiring her to work on campus five days a week-- neither of which she had ever been required to do prior to her informing NOVA that she suffered from anxiety and panic attacks—were not legitimate expectations.

147.    The short temporal proximity between Dr. Credle's informing NOVA of her disabilities on July 13, 2022 and NOVA's taking the adverse employment actions against her on July 20, 2022, create the causal connection to raise a reasonable inference that NOVA was discriminating against Dr. Credle on the basis of her disability.

148.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

149.    Defendant's actions in discriminating against Dr. Credle on the basis of her disability violate the ADA, 42 U.S.C § 12112(a).

150.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological

damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

151.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT VI**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE VHRA**
**[42 U.S.C. §§ 12101, *et seq*.]**

152.    Paragraphs 1-79 and 131-147 are realleged and incorporated herein by reference.

153.    Va. Code Ann. § 2.2-3905(B)(1)(a) makes it unlawful for an employer to "[f]ail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment, because of such individual's…disability."

154.    Analysis of disability discrimination claims under the VHRA follows the analysis applied to disability discrimination claims under the ADA. Thus, to establish a claim for disability discrimination under the VHRA, a plaintiff must prove that:

> (1) she was a qualified individual with a disability; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations at the time of the adverse employment action; and (4) the circumstances of the adverse employment action raise a reasonable inference of unlawful discrimination.

*Tartaro -McGowan v. Inova Home Health, LLC,* No. 1:21-cv-298 (RDA/TCB), 2022 WL 2232190 at *7 (E.D.Va. June 21, 2022).

155.    By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

156.     Defendant's actions in discriminating against Dr. Credle on the basis of her disability violate the VHRA, Va. Code Ann. § 2.2-3905(B)(1)(a).

157.     As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

158.     As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT VII**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**
**[42 U.S.C. §§ 12101, *et seq*.]**

159.     Paragraphs 1-79 and 127-147 are realleged and incorporated herein by reference.

160.     The ADA states that "the term 'discriminate against a qualified individual on the basis of disability' includes…not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

161.     As NOVA informed Dr. Credle that she would have to request a reasonable accommodation in order to be relieved of her fall teaching obligation, Dr. Credle followed NOVA's advice and requested that she be excused from her teaching obligations for the fall semester.

162.   NOVA summarily denied Dr. Credle's reasonable accommodation request. At no time did NOVA attempt to engage in the interactive process with Dr. Credle to determine what reasonable accommodations would permit Dr. Credle to perform the essential functions of her position.

163.   NOVA never indicated that Dr. Credle's reasonable accommodation request would cause NOVA to experience an undue hardship.

164.   By refusing to engage in the interactive process and refusing Dr. Credle's requests for a reasonable accommodation, NOVA discriminated against Dr. Credle on the basis of her disability, in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A).

165.   As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

166.   As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT VIII**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE VHRA**
**[Va. Code Ann. § 2.2-3905]**

167.   Paragraphs 1-79, 127-147, and 160-163 are realleged and incorporated herein by reference.

168.   Analysis of failure to accommodate claims under the VHRA follows the analysis applied to failure to accommodate claims under the ADA.

169.    Thus, under the VHRA, it is unlawful for an employer to refuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer.

170.    By refusing to engage in the interactive process and refusing Dr. Credle's requests for a reasonable accommodation, NOVA discriminated against Dr. Credle on the basis of her disability, in violation of the VHRA, Va. Code Ann. § 2.2-3905(B)(1)(a).

171.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

172.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT IX
## DISABILITY RETALIATION IN VIOLATION OF THE ADA
### [42 U.S.C. § 12203(b)]

173.    Paragraphs 1-79, 127-147, and 160-164 are realleged and incorporated herein by reference.

174.    Under the ADA, it is unlawful for an employer to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed…any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

175.    In order to establish her *prima facie* case of retaliation under the ADA, Dr. Credle must prove that: "(1) she engaged in protected activity; (2) her employer took adverse action

against her; and (3) the adverse action was causally connected to her protected activity." *Tartaro-McGowan,* 2022 WL 2232190 at *9 (citing *A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 350 (4th Cir. 2011)).

176.    A plaintiff "'clearly engaged in protected activity by submitting a request for accommodation.'" *Id.* (quoting *Jacobs v. North Carolina Admin. Off. Of the Courts,* 780 F.3d 562, 577 (4th Cir. 2015)).

177.    Dr. Credle engaged in a protected activity when she requested the reasonable accommodations of not having to teach the SDV course in the fall of 2022 and not having to work on-campus five days each week.

178.    "An adverse action is defined as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Washington v. Offender Aid and Restoration of Charlottesville-Albemarle, Inc.,* No. 3:22-cv-00041, 2023 WL 4032875 at *8 (W.D.Va. June 15, 2023) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1988)).

179.    Defendant's actions in stripping Dr. Credle of responsibilities relating to projects she had been successfully working on, requiring her to take on additional responsibilities by teaching the SDV course, and denying her reasonable accommodation requests constitute adverse employment actions.

180.    Close temporal proximity between the plaintiff's protected activity and the employer's adverse action is sufficient to establish the causal connection between the two at the *prima facie* stage. *See Tartaro-McGowan,* 2022 WL 2232190 at *10 (finding that the plaintiff's protected activity of requesting a reasonable accommodation on May 13, 2020 and the employer's

terminating her employment on June 24, 2020, was close enough in temporal proximity to give rise to an inference of causation).

181.     On July 13, 2022, Dr. Credle informed Defendant of her disabilities—anxiety, depression, and associated panic attacks—after she returned to work after being unlawfully suspended.

182.     Shortly thereafter, on July 20, 2022, Provost Mucci emailed Dr. Credle with a list of discussion items. This list included notifying Dr. Credle that: (1) she would no longer be responsible for working on the Arlington Sheriff's Department project: (2) she would be required to teach a SDV course in the fall of 2022; and (3) she is expected to work on campus five days each week.

183.     Dr. Credle responded by telling Provost Mucci she did not think she could teach the SDV course or work on campus five days a week due to her disabilities.

184.     On July 21, 2022, Provost Mucci informed Dr. Credle she would need to submit a reasonable accommodation request.

185.     On or around August 16, 2022, Dr. Credle complied and submitted her reasonable accommodation request with supporting medical documentation, and thereby engaged in a protected activity.

186.     On August 23, 2022, Defendant responded by summarily rejecting Dr. Credle's reasonable accommodation request, without even attempting to engage in the interactive process with Dr. Credle.

187.     Defendant's refusing to grant Dr. Credle's reasonable accommodation request constitutes an adverse employment action, because that refusal resulted in an assignment with

significantly different responsibilities—teaching the SDV course and working on campus five days each week.

188. By retaliating against Dr. Credle because she engaged in protected activity, Defendant violated the ADA, 42 U.S.C. § 12203(b).

189. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

190. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT X**
**DISABILITY RETALIATION IN VIOLATION OF THE VHRA**
**[Va. Code Ann. § 2.2-3905(B)(1)(a)]**

191. Paragraphs 1-79, 131-147, 161-163, and 175-188 are realleged and incorporated herein by reference.

192. Analysis of retaliation claims under the VHRA follows the analysis applied to retaliation claims under the ADA.

193. Thus, under the VHRA, it is unlawful for an employer to take an adverse employment action against an employee because the employee engaged in a protected activity.

194. Protected activities include the employee's making a reasonable accommodation request.

195.    On or about August 16, 2022, Dr. Credle engaged in a protected activity when she requested the reasonable accommodations of not having to teach the SDV course in the fall of 2022 and not having to work on-campus five days each week.

196.    Defendant took an adverse employment action against Dr. Credle when it summarily denied her reasonable accommodation request on August 23, 2022, which denial resulted in her having significantly different responsibilities.

197.    The close temporal proximity between Dr. Credle's protected activity and Defendant's taking an adverse employment action against her raises an inference of causation at the *prima facie* stage of her retaliation claim.

198.    By retaliating against Dr. Credle because she engaged in protected activity, Defendant violated the VHRA, Va. Code Ann. § 2.2-3905(B)(1)(a).

199.    As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, emotional distress, and loss of career path opportunities in amounts within the jurisdictional limits of this Court, to be proved at trial.

200.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## **JURY DEMAND**

Plaintiff demands a trial by jury for those issues, which are triable by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dr. Joanne Credle, prays for the following relief:

a.  Entry of judgment in favor of Plaintiff and against Defendant on all counts of this Complaint;

b.  Compensatory damages;

c.  Injunctive relief, to include:

(i) ordering Defendant to transfer and/or create a Director position for Plaintiff with a concomitant increase in her salary;

(ii) ordering Defendant to expunge all documents in Plaintiff's personnel file relating to her suspension; and

(ii) ordering Defendant to expunge all documents in Plaintiff's personnel file relating to the July 11, 2022, Letter of Reprimand.

d.  Reasonable attorneys' fees and court costs associated with this suit and the lower EEOC proceedings;

e.  Awarding prejudgment interest, costs and disbursement as appropriate herein; and

f.  Other relief as may be appropriate, and that this Court deems equitable, appropriate, and just.

Respectfully submitted,

/s/Valerie A. Teachout
Valerie A. Teachout, Esq. (VA Bar No. 70887)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Avenue, Suite 425
Alexandria, Virginia 22304
Direct Line: (571) 513-6942
Main Line: (202) 449-8527
Facsimile: (202) 517-9179
Email: vteachout@spigglelaw.com

*Counsel for Plaintiff, Dr. Joanne Credle*