IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DR. JOANN CREDLE,
    Plaintiff,

v.                                                          Civil No. 3:24cv233 (DJN)

VIRGINIA COMMUNITY
COLLEGE SYSTEM,
    Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Virginia Community College System's

("Defendant") Motion to Dismiss (ECF No. 21) and Motion to Strike (ECF No. 22).  In its

Motion to Dismiss, Defendant moves to partially dismiss Count I and to dismiss Count II in its

entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Further, Defendant moves to dismiss Counts I, II and III for failure to state a claim upon which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Finally, Defendant moves

to strike portions of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure

12(f).  Because a plaintiff's mere supposition of racial animus in the context of a simple

employment dispute does not warrant relief for racial discrimination, Plaintiff's claims must be

dismissed.  As such, the Court will GRANT Defendant's Motion to Dismiss (ECF No. 21) and

DENY AS MOOT Defendant's Motion to Strike (ECF No. 22).

## I.     BACKGROUND

The facts recited by Defendant's First Amended Complaint ("FAC") (ECF No. 16), which

the Court must accept as true for present purposes, reveal the following factual narrative.

Defendant is a statewide system of publicly supported community colleges established and administered by the Virginia State Board of Community Colleges. (ECF No. 23 ("Mem.") at 2.) Northern Virginia Community College's ("NOVA") Annandale campus is one of Defendant's locations. (FAC ¶ 16.) Plaintiff began working for Defendant at NOVA in 1982. (*Id.*) Plaintiff now serves as the Coordinator of Specialized Programs. (*Id.* ¶ 17.) In this position, Plaintiff works with students and stakeholders to administer special programs. (*Id.* ¶ 9.) Plaintiff is also a member of the Provost's office and reports directly to the Annandale Provost, Dr. Diane Mucci ("Dr. Mucci"). (*Id.* ¶ 18.)

Plaintiff served as a member of the Conference for Hispanic Students project ("Conference" or "project"). (*Id.* ¶ 19.) As part of the project, Plaintiff arranged for children to be at the Conference in a separate room, but in close proximity to their parents attending the Conference. (*Id.* ¶ 20.) Plaintiff alleges that she obtained prior verbal approval from Dr. Mucci for the children to attend. (*Id.*) Despite receiving approval, the Director of College Government Affairs and Community Relations, Thomas "Dana" Kauffman ("Mr. Kauffman"), notified Plaintiff on or about June 8, 2022, that she did not follow protocol when she allowed children to be present at the Conference, and would therefore be removed from the project's planning team. (*Id.* ¶ 19.)

Plaintiff was the only African American staff member assigned to plan the Conference. (*Id.* ¶ 23.) Additionally, Plaintiff alleges that while "other staff members on the Conference Project were not performing satisfactorily, [Plaintiff] was the only individual removed from the project." (*Id.* ¶ 22.) Plaintiff contends that planning team members' continued requests for her assistance after her removal from the project demonstrates her satisfactory performance. (*Id.*)

2

Plaintiff was displeased with her removal from the project.  As a result, on June 8, 2022, Plaintiff "emailed NOVA President, Dr. Anne Kress ("Dr. Kress"), expressing her concerns about being removed from the Conference project and requesting to be returned to the project." (*Id.* ¶ 24.)  Plaintiff alleges that her removal sparked rumors that she was unable to perform her duties satisfactorily.  (*Id.* ¶ 25.)  On June 9, 2022, Plaintiff emailed Dr. Mucci and Mr. Kauffman regarding these rumors.  (*Id.* ¶ 26.)  In the email, Plaintiff informed her superiors that "she would be submitting medical documentation in support of her need to take a few weeks working away from campus," and that she "cannot take the people talking behind my back." (*Id.*)

By the next day, June 10, 2022, Plaintiff had not received a reply to her email.  (*Id.* ¶ 28.) As a result, Plaintiff went to Mr. Kaufman's office to address the issue in person.  (*Id.*)  Plaintiff alleges that Mr. Kaufman refused to speak with her, falsely claimed that Plaintiff threatened him and demanded that Plaintiff leave his office.  (*Id.*)  After leaving Mr. Kaufman's office, Plaintiff went to Dr. Mucci's office to discuss the rumors that Plaintiff could not perform her job duties. (*Id.* ¶ 29.)  As this point, Plaintiff proved "distraught about being removed from the program and Mr. [] Kauffman's hostile response."  (*Id.* ¶ 30.)  Plaintiff then contacted NOVA's Director of Human Resources ("HR"), Tammy Currie ("Ms. Currie"), and Associate Vice-President of HR, Charlotte Calobrisi ("Ms. Calobrisi"), detailing what had happened.  (*Id.* ¶¶ 30, 31.)  Later that day, Plaintiff also spoke with a former student about her removal from the project.  (*Id.* ¶ 32.) Plaintiff expressed that "she felt her removal from the Conference project was because she is African American, particularly given that [Plaintiff] was the only African American NOVA employee on the Conference Committee and the only committee member reprimanded for doing something she had been given express permission by Provost Mucci to do."  (*Id.*)  Plaintiff

3

alleges that Dean Rahman's assistant overheard this conversation and reported it to Dean Rahman. (*Id.*)

During the evening of June 10, 2022, Ms. Currie emailed Plaintiff notifying her that she was "suspended until further notice because she was 'a threat.'" (*Id.* ¶ 33.) Defendant did not give Plaintiff an immediate opportunity to respond to this allegation. (*Id.*) On June 15, 2022, Mr. Kauffman emailed Plaintiff to say that human resources was investigating unprofessional conduct that she allegedly demonstrated on June 10, 2022. (*Id.* ¶ 35.) Mr. Kauffman also informed Plaintiff that she was barred from the NOVA premises during her administrative leave period. (*Id.*)

On July 6, 2022, Plaintiff met with Mr. Kauffman, Ms. Currie, and Ms. Calobrisi to discuss the June 10, 2022 incident. (*Id.* ¶ 36.) At the end of the meeting, Mr. Kauffman, Ms. Currie and Ms. Calobrisi informed Plaintiff that she could return to work on July 11, 2022. When Plaintiff returned to work on July 11, 2022, Dr. Mucci issued a "Letter of Reprimand" to Plaintiff. (*Id.* ¶ 48.) The letter alleged that Plaintiff "'had several interactions with colleagues and co-workers on the Annandale Campus that were unprofessional and discourteous' in connection with her removal from a project on June 8, 2022." (*Id.*) The letter detailed that Plaintiff's interactions on June 10, 2022 included her "raising her voice and making inappropriate comments to coworkers and a community partner." (*Id.*) Further, the letter said that Plaintiff's conduct violated various workplace policies. (*Id.* ¶ 49.) Plaintiff alleges that Defendant has failed to discipline non-African American colleagues who engaged in "misconduct that is similar to the misconduct which [Defendant] claims [Plaintiff] engaged in." (*Id.* ¶ 53.) Plaintiff cites an example of a colleague who was reported for numerous rude interactions but was not suspended like Plaintiff was. (*Id.* ¶ 54–58.)

4

After Plaintiff returned to work, she began to experience "debilitating panic attacks due to the discrimination and harassment that she had been subjected to." (*Id.* ¶ 59.) Plaintiff alleges that "[h]er work conditions had become so hostile that [she] would experience frequent anxiety attacks." (*Id.* ¶ 60.) Plaintiff informed Dr. Mucci that she was experiencing panic attacks at work due to the conditions. (*Id.* ¶ 61.)

On July 20, 2022, Dr. Mucci emailed Plaintiff with a list of "discussion items," one of which was a new requirement that Plaintiff was required to work at the NOVA campus 8:00 a.m. to 4:30 p.m. Monday through Friday due to "business needs. . . . changing." (*Id.* ¶ 63.) But for the past "ten to fifteen years, [Plaintiff] had only been required to work on campus four days per week. (*Id.* ¶ 64.) And despite Dr. Mucci's reasoning that the NOVA campus' "business needs are changing," Plaintiff asserts that Dr. Mucci did not similarly require any of Plaintiff's colleagues, who are not African American, to adhere to the new in-office requirement. (*Id.*) A further discussion item in Dr. Mucci's email was notifying Plaintiff that she would have additional responsibilities taken away and given to non-African American colleagues. (*Id.* ¶ 65.) This included a program with the Arlington County Sheriff's Office, despite Plaintiff already completing tasks on this program. (*Id.*) And finally, Dr. Mucci informed Plaintiff that she now had to teach an SDV course, a task that Plaintiff had never previously been required to do. (*Id.* ¶¶ 71, 72.)

On July 21, 2022, Plaintiff heard from a colleague that Dr. Kress "did not want [Plaintiff] to go out and set up programs." (*Id.* ¶ 68.) After hearing this, Plaintiff emailed Dr. Kress, Ms. Calobrisi and Ms. Currie expressing concern about not being allowed to set up programs and additional duties being taken away from her. (*Id.*) Dr. Kress responded only to tell Plaintiff that "all matters regarding her duties should only be discussed with [Dr.] Mucci." (*Id.* ¶ 69.)

Due to Plaintiff's panic attacks at work, she informed Dr. Mucci that she would be unable to teach the SDV course.  (*Id.* ¶ 73.)  In response, Dr. Mucci suggested that Plaintiff retire.  (*Id.* ¶ 74.)  Later that day, Dr. Mucci emailed Plaintiff that "she would need to request an accommodation in order to be relieved from teaching the SDV courses." (*Id.* ¶ 75.)  But Dr. Mucci further elaborated that "excessive absenteeism is not permitted under VCCS or DHRM policy.  Similarly, misrepresenting the reason for requesting sick leave is an abuse of sick time and is not acceptable.  Any action that is a violation of policy or is not permitted may result in sanctions up to and including dismissal." (*Id.* ¶ 76.)  Plaintiff interpreted these statements as a threat to her job security.  (*Id.*)

Plaintiff then applied for medical accommodations at work.  (*Id.* ¶ 77.)  But, despite providing "ample medical documentation," Defendant denied her request because "the SDV was included as part of her performance plan."  (*Id.*)  Plaintiff continued to experience panic attacks, and as a result arranged to move her SDV students to other instructors to relieve her of the obligation.  (*Id.* ¶ 79.)  Plaintiff alleges that Defendant continued to not address Plaintiff's medical concerns.  Then, in the fall of 2022, Defendant issued Plaintiff her Employee Work Plan (EWP), which reflected duties usually performed by a Specialized Program Coach, rather than a Coordinator.  (*Id.* ¶ 81.)  Plaintiff asserts that, as a result, Defendant "effectively demoted" her.  (*Id.*)

On February 24, 2023, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").  (ECF No. 23-1.)  On January 2, 2024, the EEOC issued a Notice of Right to Sue to Plaintiff.  (FAC ¶ 14.)  Plaintiff timely filed this case on March 29, 2024.  (ECF No. 1.)  The Amended Complaint raises three counts against

Defendant for race discrimination, retaliation and hostile work environment, all in violation of Title VII. (*Id.* ¶ 82–134.)

On June 27, 2024, Defendant filed the instant Motions, (ECF Nos. 21, 22), arguing that the Court lacks subject matter jurisdiction and Plaintiff fails to state a claim upon which relief can be granted. (ECF No. 21.) Defendant further seeks to strike certain portions of Plaintiff's Amended Complaint. (ECF No. 22.) On August 2, 2024, Plaintiff filed her Opposition, (ECF No. 34), and on August 15, 2024, Defendant filed its Reply, (ECF No. 36). Accordingly, the Motions now stand ripe for judicial determination.

## II.      STANDARD OF REVIEW

At this stage, the Court accepts as true the facts set forth in the Amended Complaint (ECF No. 16). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, the Court views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Although the law does not require "detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the claim "plausible on its face" rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this juncture, Rule 8 of the Federal Rules of Civil Procedure requires only that Plaintiff proffers a short and plain statement showing that Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000, *et seq,* entitles her to relief. Moreover, in the employment discrimination context, Plaintiff does not need to plead facts demonstrating that a non-discriminatory reason for terminating her employment was pretextual, as that determination is to be made at the summary judgment stage. *Ray v. Amelia County Sheriff's Office*, 302 F. App'x 209, 211 (4th Cir. 2008); *Moore v. Mukasey*, 305 F. App'x 111, 114 (4th Cir. 2008).

## III.   DISCUSSION

"Where a party has made both a Rule 12(b)(1) motion and a Rule 12(b)(6) motion, a court should address the 12(b)(1) issue first." *CSX Transportation, Inc. v. Norfolk S. Ry. Co.,* 2019 WL 4564564, at *6 (E.D. Va. Sept. 9, 2019).  As such, the Court will resolve Defendant's 12(b)(1) challenge first.

### A.  Subject Matter Jurisdiction

Plaintiff has the burden of proving that subject matter jurisdiction exists. *Richmond, F. & P.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).  A federal court properly has jurisdiction over a Title VII claim only after the plaintiff exhausts the administrative procedures set forth in 42 U.S.C. § 2000e–5. *Davis v. N. Carolina Dep't of Correction,* 48 F.3d 134, 137 (4th Cir. 1995).  Section 2000e–5(f)(1) requires an individual to obtain a Notice of Right to Sue from the EEOC before bringing suit in a federal court on a Title VII claim.  This requirement "ensures that the employer is put on notice of the alleged violations," thereby giving it a chance to address the alleged discrimination before litigation. *Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005).  That said, an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.; see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (finding that the touchstone for exhaustion is whether plaintiff's administrative and judicial claims are "reasonably related."); *Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012) (explaining that the "reasonably related" standard ensures that the employer receives adequate notice of claims that may not have been explicitly included in the initial EEOC complaint).

Here, Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiff's claims arising out of an alleged amendment to her Employee Work Profile ("EWP") and over her

retaliation claim for failing to raise — and therefore exhaust — these assertions with the EEOC. (ECF No. 23 ("Mem. Supp.") at 1.)  The Court will address both claims in turn.

### 1.  Employee Work Profile ("EWP") Claim

Defendant argues that "[n]othing alleged in the [EEOC] Charge suggests that a charge of discrimination regarding the alleged realignment of her duties to match those performed by a 'Specialized Program Coach' in Fall 2022 would have naturally arisen from an investigation" of the claims alleged in Plaintiff's EEOC Charge.  (*Id.* at 9.)  Plaintiff responds that while her "EEOC Charge did not mention anything about a formal change to her EWP, she alleged that she was being stripped of additional duties/responsibilities."  (ECF No. 36 ("Opp.") at 2.)  Therefore, the question becomes whether Plaintiff's claims in her EEOC Charge and her judicial claims before this Court are "reasonably related."  *Sydnor*, 681 F.3d at 594.

Plaintiff's EEOC Charge alleges that a colleague relayed to her that "Dr. Kress does not want [Plaintiff] to go out and set up programs."  (ECF No. 23-1 at 10–11.)  After confronting Dr. Kress about this, Dr. Kress responded that "all matters regarding her job description and assigned duties should be discussed with Provost Mucci."  (*Id.*)  Plaintiff responded that being barred from setting up programs "was not in my letter [of reprimand] that was issued to me when I was allowed to come back to work."  (*Id.* at 11.)  Plaintiff's EEOC Charge further stated that "it seem[s] to me that if I can[not] set up programs, I am useless."  (*Id.*)  Plaintiff does not explicitly mention a change in her EWP in her EEOC Charge.  But in her Amended Complaint, Plaintiff claims that "NOVA effectively demoted [Plaintiff] when she was issued her Employee Work Plan (EWP) in or around Fall 2022, and it reflected duties that were usually performed by a Specialized Program Coach, rather than a Coordinator."  (FAC ¶ 81.)

9

Despite failing to mention a change in EWP in her EEOC Charge, Plaintiff's EEOC Charge asserted sufficient facts such that a change in her EWP is "reasonably related" to not being allowed to "go out and set up programs." (ECF No. 23-1 at 10–11.) Specifically, Plaintiff's EEOC Charge demonstrates that she proved concerned about the state of her role and responsibilities such that an investigation into changes in Plaintiff's EWP would reasonably follow her EEOC charge. Thus, Plaintiff sufficiently exhausted assertions regarding a change in her EWP. As a result, the Court will not dismiss Plaintiff's claim on this ground. (ECF No. 21.)

### 2. Retaliation Claim

Next, Defendant argues that Plaintiff did not "assert a retaliation claim in her EEOC Charge" and does not even "allege that such a claim was ever before the EEOC." (Mem. Supp. at 9.) Plaintiff responds that although she "did not formally raise a retaliation claim in her EEOC Charge, she clearly alleged that she believed that [Defendant] was taking adverse actions against her because of opposition to her discriminatory removal from the Conference Project." (Opp. at 3.) As a result, Plaintiff argues that "[a] retaliation claim would have reasonably arisen from an investigation of her allegations that the adverse actions taken against her resulted from her opposition to discriminatory activity." (*Id.*)

In *Miles v. Dell*, the Fourth Circuit addressed whether the plaintiff's retaliation claim was reasonably related to her EEOC Charge. *Miles v. Dell, Inc.,* 429 F.3d 480, 491–92 (4th Cir. 2005). The *Miles* court found that the plaintiff did not sufficiently exhaust her retaliation claim, because she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation." *Id*. Further, regarding plaintiff's insufficient narrative, the court explained that "[a]lthough [plaintiff's EEOC Charge] narrative states that she complained to [the alleged discriminator's] supervisor, it does not state that she complained to

10

him *about discrimination.*" *Id.* Instead, plaintiff only stated in her EEOC Charge that she

discussed the alleged discriminator's "hostile attitude" with his supervisor, and never stated

whether the alleged discriminator was aware that plaintiff had complained to his supervisor. *Id.*

Therefore, these statements failed to show that the alleged discriminator "was motivated by a

retaliatory impulse." *Id.* Summarizing its conclusion, the court explained that the plaintiff's

"charge does not remotely allege that [the alleged discriminator] retaliated against [plaintiff]

because she had complained of his discriminatory conduct to his supervisor, and it does not

otherwise allege facts that would have put [defendant] or the EEOC on notice that she was

charging [defendant] with retaliation." *Id.*

   Here, Plaintiff similarly did not check the retaliation box on her EEOC Charge form:

| DISCRIMINATION BASED ON *(Check appropriate box(es) )* | | | | |
|---|---|---|---|---|
| [X] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NATIONAL ORIGIN |
| [ ] RETALIATION | [X] AGE | [X] DISABILITY | | [ ] GENETIC INFORMATION |
| [X] OTHER *(Specify)*  **HWE** | | | | |

(ECF No. 23-1 at 2.)  Further, Plaintiff's narrative in her EEOC Charge does not mention the

word retaliation, nor does it allege facts that amount to a retaliation allegation.[1]  (ECF No. 23-1

at 3–13.)  Plaintiff alleges in her EEOC Charge that a colleague overheard — and later reported

to their supervisor — Plaintiff telling a former student that she felt her removal from the project

"was because she is African American." (*Id.* at 3.)  Plaintiff did not subsequently allege that any

of the disciplinary actions taken against her were connected to this allegation or "motivated by a

retaliatory impulse." *Miles,* 429 F.3d at 491-92.  Instead, Plaintiff alleges only discrimination

---

[1]    The Court notes that Plaintiff had the assistance of counsel when filing her EEOC Charge. (ECF No. 23-1 at 2.) As a result, the Court need not "liberally" construe Plaintiff's Charge, as it would have had Plaintiff lacked representation. *Chacko v. Patuxent Inst.,* 429 F.3d 505, 509 (4th Cir. 2005).

and hostile work environment. (ECF No. 23-1 at 3–13.)  But like *Miles*, alleging discrimination alone is insufficient to adequately exhaust a retaliation claim.  *Miles,* 429 F.3d at 491-92.  As a result, the Court finds that Plaintiff's retaliation claim does not reasonably relate to her EEOC Charge such that it would have reasonably followed from an investigation of Plaintiff's sex discrimination and hostile work environment claims.  As a result, the Court lacks subject matter jurisdiction over Plaintiff's retaliation claim.  Therefore, the Court DISMISSES Count II of Plaintiff's Amended Complaint (ECF No. 16).

### B. Failure to State a Claim

#### 1. Count I — Title VII Disparate Treatment

Title VII protects those in a protected class from overt discrimination, known as disparate treatment discrimination.  Plaintiffs have two available avenues to establish liability under Title VII for this type of claim:  (1) "demonstrate through direct or circumstantial evidence that [race] was a motivating factor in the employer's adverse employment action"; or (2) use the burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017).  Here, Plaintiff omits argument related to the direct and circumstantial evidence approach; therefore, the Court proceeds by assuming that Plaintiff cannot demonstrate disparate treatment through that approach.[2]

---

[2]    Even still, the Court finds that Plaintiff failed to plead sufficiently direct or circumstantial evidence to support an inference that race served as a motivating factor in the adverse employment actions that she pleads.  Plaintiff's only mention of race as it relates to her alleged adverse employment actions is that she "mentioned to a former student when she was informed of her removal, [that] she was being removed because she is African American." (FAC ¶ 87.) Further, Plaintiff asserts that when a colleague called her behavior threatening, he "perpetuat[ed] a stereotyped belief that African American women who raise their voices are 'Angry Black Women' and are acting in a threatening manner." (*Id.* ¶ 88.)  These do not constitute direct or circumstantial evidence that Defendant discriminated against Plaintiff on the basis of her race. Instead, these simply amount to Plaintiff's own characterizations of a workplace decision and interaction.

To establish a claim under *McDonnell Douglas*, a plaintiff must put forth a prima facie case of discrimination by establishing:  (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).  The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." *Swaso,* 698 F. App'x at 747 (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).  And while a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint remains subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal.  Id.*

Under Count I, the parties omitted briefing on prong one (membership in a protected class).  Thus, the Court reviews only prongs two, three and four.  For prong two, Plaintiff asserts that she performed her duties satisfactorily.  (FAC ¶ 127.)  As for prongs three and four, Plaintiff alleges that Defendant's discrimination (prong four) resulted in five adverse employment actions against her (prong three).  The Court will begin by addressing the alleged adverse employment actions (prong three) before turning to prongs two and four.

### a. Adverse Employment Actions Under Title VII

A Title VII claim requires that a plaintiff experience an adverse employment action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007).  Termination constitutes the typical adverse employment action predicating a Title VII claim.  However, actions short of termination can constitute an adverse employment action in a Title VII claim for disparate treatment, the type of claim that Plaintiff brings in Count I, under certain circumstances.  To rise to the level of an adverse employment action absent termination, the misconduct must be more

13

than something that offends the employee, and instead must materially alter "the terms, conditions, or benefits" of the plaintiff's employment. *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). But the Supreme Court recently held in *Muldrow v. City of St. Louis, Missouri* that a plaintiff alleging workplace discrimination need not establish that she suffered a "*significant* employment disadvantage." 144 S. Ct. at 976–77. Instead, a plaintiff need only show that she suffered "some injury." *Id.*

Plaintiff alleges that she suffered the following adverse employment actions: (1) placement on administrative leave; (2) a Letter of Reprimand; (3) the amendment to her Employee Work Profile ("EWP"); (4) losing her "responsibilities relating to projects she had been successfully working on;" and (5) having "to take on additional responsibilities by teaching the SDV course." (FAC ¶¶ 94–95.) The Court will address each in turn.

### i. Administrative Leave

Plaintiff alleges that when Defendant placed her on administrative leave, it denied her "the benefits that other staff members received during this time period, including a bonus." (FAC ¶ 47.) As a result, Plaintiff argues that her placement on administrative leave constituted an adverse employment action. (Opp. at 6.) Defendant disagrees, arguing that "paid administrative leave does not constitute an adverse employment action in the discrimination context." (ECF No. 36 ("Rep.") at 5.)

Courts in the Fourth Circuit have held that placement on administrative leave with pay does not constitute an adverse employment action. *See Von Gunten v. Maryland,* 243 F.3d 858, 869 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (finding that administrative leave with pay for a short time to allow investigation of the matter did not constitute an adverse employment action); *Sturdivant v. Geren,*

14

2009 WL 4030738, at *6 (E.D. Va. Nov. 19, 2009), *aff'd sub nom. Sturdivant v. McHugh,* 450 F.

App'x 235 (4th Cir. 2010) (holding a 90-day paid administrative leave did not constitute an

adverse employment action as required for a claim of discrimination or retaliation); *Brackney-*

*Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 632 (W.D. Va. 2023) (finding that paid

administrative leave did not constitute an adverse employment action); *Williams v. Newport*

*News Sch. Bd.*, 2021 WL 3674983, at *10 (E.D. Va. Aug. 19, 2021) (finding that because it

remained unclear on the facts whether plaintiff's administrative leave was paid, plaintiff's

administrative leave "plausibly implicate[d] a significant detrimental effect so as to constitute an

adverse employment action").

      Plaintiff seeks to skirt this precedent by alleging that that her placement on paid

administrative leave deprived her of a bonus that other employees received while she was out,

and therefore constitutes an adverse employment action as a "decrease in . . . benefits."  (FAC

¶ 47; Opp. at 7.)   However, courts in the Fourth Circuit have held that the denial of a

discretionary bonus does not constitute an adverse employment action.  *See Smith v. Virginia*

*Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 510 (E.D. Va. 2020) (finding that the denial of a

discretionary bonus was not an adverse employment action); *Harris v. The Vanguard Group, Inc.*,

2015 WL 9685565, at *3 (W.D.N.C. Nov. 6, 2015), *report & recommendation adopted at* 2016

WL 110600; *aff'd* 667 F. App'x 815 (4th Cir. 2016) (holding same); *Nasis-Parsons v. Wayne*,

2006 WL 1555913, at *5 (E.D. Va. June 1, 2006), *aff'd sub nom. Parsons v. Wynne*, 221 F. App'x

197 (4th Cir. 2007) (holding that "the loss of a discretionary or gratuitous bonus does not have a

tangible effect on the terms or conditions of employment when the employee is not automatically

entitled to her bonus.")

As a result, the Court finds that Defendant placing Plaintiff on paid administrative leave — causing Plaintiff to miss out on a potential, discretionary bonus — does not constitute an adverse employment action for purposes of a Title VII discrimination claim.

### ii. Letter of Reprimand

Next, Plaintiff contends that the July 11, 2022 Letter of Reprimand that she received from Dr. Mucci constituted an adverse employment action, because it "resulted in not only her emotional distress, but in the loss of career path opportunities." (FAC ¶¶ 112-13; Opp. at 7.) Defendant disagrees, arguing that the Letter of Reprimand "was not an adverse employment action because [Plaintiff] does not allege to have suffered any adverse effect from it." (Mem. Supp. at 13.)

Courts in the Fourth Circuit have held that a letter of reprimand does not constitute an adverse employment action for purposes of a discrimination claim unless the reprimand was tethered to an adverse impact on the terms and conditions of the plaintiff's employment. *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 819–20 (E.D. Va. 2016) (holding that "neither oral nor written reprimands constitute the sort of adverse employment action cognizable under Title VII unless plaintiff also alleges that the reprimand has potential collateral consequences that rise to the level of an adverse employment action"); *Lee v. Virginia Beach Sheriff's Off.*, 2014 WL 1493560, at *7 (E.D. Va. Apr. 14, 2014) (citing *Plateau v. South Carolina Comm'n for the Blind*, 50 Fed. Appx. 653, 655 (4th Cir. 2002)) (holding that "[e]ven if Plaintiff had received a written reprimand, such a written reprimand is not an adverse employment action within the scope of Title VII, unless it was 'used as a basis to detrimentally alter the terms and conditions of the recipient's employment'").

16

While Plaintiff alleges that the Letter of Reprimand caused her "emotional distress" and "the loss of career path opportunities," neither of these allegations show that the Letter or Reprimand detrimentally altered the terms and conditions of Plaintiff's employment. (FAC ¶¶ 112-13; Opp. at 7.) First, emotional distress does not plausibly impact the terms and conditions of one's employment. Second, Plaintiff alleges that the Letter of Reprimand caused her to lose "career path opportunities." However, she cites no specific opportunities that she lost as a result of the letter that detrimentally altered the terms of her employment.[3] As a result, because Plaintiff's Amended Complaint offers no factual basis for this allegation, the allegation is conclusory and the Court affords it no weight in the motion-to-dismiss analysis under *Iqbal*. 129 S. Ct. at 1949. As such, the Letter or Reprimand did not constitute an adverse employment action for purposes of a Title VII discrimination claim.

### iii. Amendment to Plaintiff's Employee Work Profile

Plaintiff alleges that Defendant "effectively demoted [her] when she was issued her Employee Work Plan (EWP) in or around Fall 2022, and it reflected duties that were usually performed by a Specialized Program Coach, rather than a Coordinator." (FAC ¶ 81.) As a result, Plaintiff asserts that the amendment to her EWP constituted an adverse employment action. (*Id.* ¶ 95.) Defendant disagrees, arguing that Plaintiff "states no facts to explain how being required to perform duties usually performed by a Specialized Program Coach – without any resulting change in job title, pay, supervisory authority, or promotional opportunity – constitutes a 'demotion.'" (Mem. Supp. at 14.)

---

[3]     Further, *Muldrow* does not save Plaintiff's allegation. While *Muldrow* expanded the scope of what qualifies as an adverse employment action such that a plaintiff need not prove their adverse employment action was "significant," a plaintiff must still plead particular facts to support their allegations. *Muldrow*, 601 U.S. at 354–55.

The Fourth Circuit has held that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone v. Goldin*, 178 F.3d 253, 256–57 (4th Cir. 1999); *see also James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 376 (4th Cir. 2004) (holding that "[t]he mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action"); *Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001) (holding same).

But the Supreme Court's recent decision in *Muldrow* abrogated Fourth Circuit decisions on the issue of what constitutes a sufficient change in employment terms or conditions. 601 U.S. at 355. Expanding the scope of what qualifies, Justice Kagan wrote that in the context of a discrimination claim "[an employee] must show *some* harm respecting an identifiable term or condition of employment." *Id.* at 354–55 (emphasis added). However, she does "not have to show . . . that the harm incurred was significant. Or serious, or substantial or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Moreover, "[t]he terms or conditions phrase . . . is not used in the narrow contractual sense; it covers more than the economic or tangible." *Id.* While the full impact of *Muldrow* on Fourth Circuit precedent remains uncertain, the Supreme Court definitively lowered the bar as to what qualifies as an adverse employment action for purposes of a Title VII claim.

In considering whether Plaintiff meets this standard, the Court looks to the facts of *Muldrow*, where plaintiff's rank and pay remained the same, but the Supreme Court found, based on the allegations below, that she had sufficiently pleaded injury:

> [Plaintiff] was moved from a plainclothes job in a prestigious specialized division giving her substantial responsibility over priority investigations and frequent

18

> opportunity to work with police commanders. She was moved to a uniformed job supervising one district's patrol officers, in which she was less involved in high-visibility matters and primarily performed administrative work. Her schedule became less regular, often requiring her to work weekends; and she lost her take-home car.

*Id.* at 359. While the *Muldrow* Court concluded that the plaintiff met the "some injury" requirement "with room to spare," *Muldrow*'s lower standard does not relieve a plaintiff of the responsibility to plead particularized facts with respect to an injury. And here, Plaintiff fails to plead any concrete harm that she suffered from Defendant amending her EWP, let alone a remotely comparable injury to that pled in *Muldrow*. 601 U.S. at 359.

Plaintiff alleges that she proved "effectively demoted" when issued a new EWP that "reflected duties that were usually performed by a Specialized Program Coach, rather than a Coordinator." (FAC ¶ 81.) Plaintiff further alleges that a colleague informed her that her managers "did not want [her] to go out and set up programs," something that is "the core responsibility of her position as Coordinator of Specialized Programs." (*Id.* ¶ 68; Opp. at 2.) But it is entirely unclear to the Court the extent to which a Coordinator and Coach differ, let alone any injury Plaintiff suffered as a result. This is unlike *Muldrow*, where the plaintiff pleaded that the injuries that she suffered after being transferred to a new position included, among other things, losing her take-home police car, working on weekends, performing primarily administrative work, and decreased supervisory responsibility. 601 U.S. at 359. Plaintiff, on the other hand, does not allege that she was transferred to a new role, just that she believed she was "effectively demoted." This allegation, based entirely off Plaintiff's own characterizations, is conclusory, and therefore afforded no weight at the motion-to-dismiss stage. As a result, Plaintiff failed to plead that she suffered harm respecting an identifiable term or

19

condition of her employment when Defendant amended her EWP. Thus, Defendant's amendment of Plaintiff's EWP does not constitute an adverse employment action under Title VII.

### iv. "Stripping" Plaintiff of Responsibilities

Plaintiff alleges that Defendant "stripp[ed] [Plaintiff] of responsibilities relating to projects she had been successfully working on." (FAC ¶ 105.) These responsibilities include serving on the Conference for Hispanic Students planning team and attending meetings with the Arlington County Sheriff's Office. (*Id.* ¶¶ 19, 65.) Plaintiff argues that this "stripping [] of responsibilities . . . constitute[s] [an] adverse employment action." (*Id.* ¶ 105.) Defendant presumably disagrees but offers no argument as to why removing Plaintiff from the Conference for Hispanic Students planning team and from meetings with the Arlington County Sheriff's Office do not constitute adverse employment actions. As a result, the Court considers this issue conceded.

### v. Additional Responsibilities

Plaintiff alleges that when Defendant permitted her to return to work, it "subjected her to additional requirements," which included teaching a "Student Development (SDV)" and be present on NOVA's campus five days per week. (*Id.* ¶¶ 93, 100.) Plaintiff had never been required to teach an SDV course as a Specialized Programs Coordinator. (*Id.* ¶ 104.) Further, "for the past ten to fifteen years, [plaintiff] had only been required to work on campus four days per week." (*Id.* ¶ 101.) Defendant disagrees that these additional requirements constitute an adverse employment action, arguing that Plaintiff never actually taught the SDV course and that Plaintiff failed to adequately allege that working five days per week in office was an adverse employment action. (Mem. Supp. at 11, 16.)

20

First, the Court agrees with Defendant that Plaintiff's Amended Complaint asserts that she did not, in fact, teach the SDV course.  Instead, Plaintiff "under[took] her own efforts to ensure that students were assigned to other SDV courses." (FAC ¶ 80.)  As a result, no adverse employment action occurred.  Second, the Court finds that Plaintiff adequately pleaded facts to assert that being required to work in-office five days a week, as opposed to four, was an adverse employment action.  Dictating where one can work is a condition of employment.  And because Defendant changed Plaintiff's in-office work requirement, this qualifies as an adverse employment condition.[4]

### b. Inference of Unlawful Discrimination

"A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means." *Swaso*, 698 F. App'x at 748 (citation omitted).  Instead, the Court "may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant." *Id.* (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)).  Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Swaso*, 698 F. App'x at 748 (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).

Because the Court determined above that placement on paid administrative leave, the Letter of Reprimand, amending Plaintiff's EWP and teaching an SDV course do not qualify as

---

[4]    Defendant notes in their Motion to Dismiss that Plaintiff "mischaracterize[d]" the directive that Plaintiff work in-office five days per week.  (Mem. Opp. at 5.)  Instead, they argue that Dr. Mucci's new requirement was that Plaintiff work five days a week *anywhere*, because at the time, Plaintiff was only working four days per week.  (*Id.*)  At this stage, the Court will resolve all factual disputes in the Plaintiff's favor.

adverse employment actions, the Court will examine only whether the remaining adverse employment actions are tethered to an inference of unlawful discrimination, as required under prong four of a disparate treatment allegation under Title VII.  The remaining adverse employment actions are:  (1) "stripping" Plaintiff of responsibilities and (2) requiring that Plaintiff work in-office five days per week.

### ii. Inference of Discrimination in Removing Responsibilities

Plaintiff alleges comparator evidence to support an inference of discrimination when Defendant removed Plaintiff from the Conference project and from a meeting with the Arlington County Sheriff's Office.  Specifically, Plaintiff asserts that "on information and belief, [Defendant] has not removed job assignments from non-African American faculty members who have been similarly successfully performing [their] assignments." (*Id.* ¶ 67.)  Further, Plaintiff alleges that she "was the only African American on the Conference Committee and the only committee member removed from the Conference project for doing something she was expressly permitted to do by [Dr.] Mucci." (*Id.* ¶¶ 32, 86.)  Defendant argues that Plaintiff's allegations lack the necessary facts to adequately establish a reliable comparator and therefore fail to satisfy the fourth prong of a prima facie case. (Mem. Supp. at 15.)

When a plaintiff chooses to rely on comparator evidence to satisfy prong four, such evidence must be "clearly established in order to be meaningful." *Swaso,* 698 F. App'x at 748 (citation omitted).  "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* (citing *Eaton v. Ind. Dep't of Corr.,* 657 F.3d 551, 556 (7th Cir. 2011)).  In *Swaso,* the plaintiff "alleged that, unlike her, some white teachers were permitted

22

to return to work with more severe restrictions or medical conditions, and that some white employees were permitted to return with similar standing restrictions." *Id.* But the Fourth Circuit agreed with the district court that these "bare allegations" failed to suffice. *Id.* Specifically, plaintiff "failed to provide any factual enhancement regarding the alleged comparators—such as the medical conditions or restrictions of the white teachers who were allowed to return, or the positions or job requirements of those employees allowed to return with standing restrictions—that would permit the court to reasonably infer their similarity." *Id.* at 749. As a result, the court found that "[a]bsent further factual development, [plaintiff] falls short of alleging facts from which to reasonably infer that their difference in treatment was attributable to racial discrimination." *Id.*

Here, Plaintiff encounters the same problem. While she alleges that she "was the only African American staff member assigned to the Conference Project," (FAC ¶¶ 23, 32), and that "[n]one of the non-African American committee members suffered any adverse employment action for doing something they had been given permission to do," (FAC ¶ 32), Plaintiff assertions amount to nothing more than "bare allegations." *Swaso*, 698 F. App'x at 748. Like *Swaso*, Plaintiff failed to provide "factual enhancements" regarding her alleged comparators (i.e., the tasks that they were given permission to do, the parameters planning committee members were given and the like) that would permit the Court to infer their similarity. *Id.* at 749. Further, Plaintiff's allegation that Defendant removed her from the project "because she is African American" is conclusory and does not salvage her comparator evidence. As a result, Plaintiff failed to adequately plead non-conclusory facts that support an inference of discrimination when Defendant removed her from the Conference project and meeting with the Arlington County Sheriff's Office.

### iii. Inference of Discrimination in 5-Days In-Office Policy

Finally, Plaintiff alleges that the circumstances surrounding Defendant's requirement that she work five days in the office supports an inference of discrimination because "[Dr.] Mucci did not similarly require any of [Plaintiff's] colleagues who are not African American to adhere to the five-day-per-week on-campus requirement." (FAC ¶¶ 64, 104.)  Defendant argues that Plaintiff again fails to adequately plead facts that support an inference of racial discrimination when Defendant required that she work five days per week. (Mem. Supp. at 11–12.)

As described above, a plaintiff utilizing comparator evidence to establish the fourth prong of a prima facie case must plead "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Swaso,* 698 F. App'x at 748 (citation omitted).  But here, Plaintiff fails to plead any facts past the conclusory statement that no other non-African American employees had to work five days per week in the office.  (FAC ¶¶ 64, 104.)  Plaintiff failed to even name a single similarly-situated colleague who was not required to work in office five days per week.  Further, under the "general pattern of racial discrimination" standard, Plaintiff would again fail, because she pleads no such pattern. *Swaso,* 698 F. App'x at 748 (citation omitted).  As a result, Plaintiff failed to plead non-conclusory facts to support an inference of discrimination as it relates to the requirement that she work in the office five days per week.

### c. Satisfactory Job Performance

Because the Court determined above that Plaintiff's adverse employment actions do not give rise to an inference of discrimination, Plaintiff's discrimination claims fail. As a result, the Court need not analyze the satisfactory job performance prong of Plaintiff's claim.

### d. Conclusion on Count I

In conclusion, Plaintiff failed to plead that any of her adverse employment actions give rise to an inference of discrimination. Instead, Plaintiff simply disagrees with how she was managed. But "mere disagreement 'with the management style or decisions of [supervisors] . . . is not actionable under Title VII.'" *Thorn v. Sebelius*, 766 F.Supp. 2d 585, 601 (D. Md. 2011), *aff'd,* 465 Fed.Appx. 274 (4th Cir. 2012) (citing *Webster v. Johnson*, 126 Fed. Appx. 583, 588 (4th Cir. 2005) (noting that stern supervision does not evidence actionable harassment)). As a result, Plaintiff's disparate treatment allegations fail to state a plausible claim upon which the Court could grant relief. Thus, the Court DISMISSES Count I of Plaintiff's Amended Complaint (ECF No. 16).

### 2. Count III — Hostile Work Environment in Violation of Title VII

"A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). "Thus, to prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Okoli v. City of Balt.,* 648 F.3d 216, 220 (4th Cir. 2011)).

The Fourth Circuit elaborated on what satisfies the hostile work environment test, noting that "[w]hile this standard surely prohibits an employment atmosphere that is 'permeated with

discriminatory intimidation, ridicule, and insult,'" (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)), "it is equally clear that Title VII does not establish a 'general civility code for the American workplace.'" *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)). "This is because, in order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *E.E.O.C.,* 521 F.3d at 315 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)). Instead, "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *E.E.O.C.,* 521 F.3d at 315 (quoting *Faragher,* 524 U.S. at 788).

Plaintiff alleges that Defendant harassed her through the following: "(1)remov[ing] [her] from the Conference Project; (2) false accusations of threatening behavior; (3) an unwarranted suspension that did not comply with [Defendant's] policy; (4) a letter of reprimand that similarly did not comply with [Defendant's] policy; (5) removal of duties that she had been satisfactorily performing; (6) requir[ing] [her] to work on campus five days a week, which had never been a prior requirement and was not required of other[] non-African American employees; (7) assign[ing] [her] to teach an SDV course, despite her medical conditions limiting her ability to perform this duty, which forced [Plaintiff] to undertake her own efforts to ensure that students were assigned to other SDV courses; [and] (8) effectively demoting her via her EWP and revising her duties to reflect a lesser role." (FAC ¶ 127.)  Plaintiff further alleges more generally that her "supervisors engaged in demeaning and hostile conduct towards [her] during the course of her employment with Defendant." (*Id.* ¶ 128.)  Defendant disagrees, arguing that Plaintiff failed to "allege[] [] racially offensive or insulting remarks, comments, or other actions" to

satisfy a hostile work environment claim. (Mem. Opp. at 21.) Defendant further contends that what Plaintiff calls harassment constitutes mere disagreement with her supervisors. (*Id.*)

With this "high bar" in mind, the Court finds that Plaintiff failed to plead conduct that could even conceivably rise to the level of harassment. *E.E.O.C.*, 521 F.3d at 315. Plaintiff clearly takes issue with the decisions that her superiors made to remove her from projects and assign additional responsibilities. But "a routine difference of opinion and personality conflict with [one's] supervisor [is] not actionable under Title VII." *E.E.O.C.*, 521 F.3d at 315–16 (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)). Further, none of Plaintiff's harassment allegations connect to her race. Instead, Plaintiff offers only the conclusory allegation that she was "subjected to hostile work environment harassment on the basis of her race." (FAC ¶ 130.) But this alone will not satisfy the standard that a workplace "environment [be] reasonably [] perceived . . . as hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

Plaintiff injects her race into these workplace disagreements by arguing that Defendant's "false accusations of [Plaintiff's] threatening behavior" perpetuated the "Angry Black Woman" stereotype. (FAC ¶¶ 3, 127.) But this constitutes Plaintiff's evaluation of an altercation, and not a statement that Defendant's employee made. As such, this allegation is conclusory and therefore given no weight at the motion-to-dismiss stage. Plaintiff further disagrees with how she was managed. But neither rude treatment nor callous behavior by a supervisor will satisfy the Title VII workplace harassment standard. *See Baqir v. Principi,* 434 F.3d 733, 747 (4th Cir. 2006) (holding that "complaints premised on nothing more than 'rude treatment by [coworkers]' are not actionable under Title VII); *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (holding that "callous behavior by [one's] superiors" is not actionable under Title

VII).  As a result, the Court finds that Plaintiff's hostile workplace allegations are entirely

conclusory and do not rise to the requisite level of hostility.  Thus, the Court DISMISSES Count

III of Plaintiff's Amended Complaint (ECF No. 16).

### C. Motion to Strike

Finally, Defendant moves to strike portions of Plaintiff's Amended Complaint as

"immaterial, impertinent and scandalous allegations."  (Mem. Supp. at 22.)  Though because the

Court granted Defendant's Motion to Dismiss and subsequently dismissed all Counts, the Court

need not consider Defendant's Motion to Strike.  Thus, the Court DENIES AS MOOT

Defendant's Motion to Strike.  (ECF No. 22.)

### IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss.

(ECF No. 21.)  Further, the Court DENIES AS MOOT Defendant's Motion to Strike.  (ECF No.

22.)  As a result, Counts I, II and III of Plaintiff's Amended Complaint (ECF No. 16) are hereby

DISMISSED.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion and notify all counsel of record.


_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  January 3, 2025